**SIGNED this 15th day of January, 2026.**

_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Sharon Annette Reid, | ) | Chapter 7 |
| | ) | Case No. 25-10566 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## ORDER DETERMINING THAT MODERN RENT TO OWN VIOLATED THE AUTOMATIC STAY AND AWARDING DAMAGES UNDER 11 U.S.C. § 362(k)

This case came before the Court for hearing on December 9, 2025, on the motion for sanctions against Modern Rent to Own for violations of the automatic stay filed by Sharon Annette Reid ("Debtor") on November 10, 2025.  ECF No. 49.[1]  At the hearing, Debtor and the Bankruptcy Administrator, John Paul Cournoyer,

---

[1] Fed. R. Bankr. P. 7004(b)(1) provides that service may be made within the United States by first class mail postage prepaid to "an individual . . . by mailing the copy to the individual's dwelling or usual place of abode or where the individual regularly conducts a business or profession."  Fed. R. Bankr. P. 7004(b)(1).  The Contract identifies the lessor by the name and at the address upon which the Debtor served, and because Modern Rent to Own appears to be doing business as a sole proprietorship, service upon the place "where the individual regularly conducts business" was proper under Rule 7004(b)(1).

appeared.[2]  Debtor is proceeding pro se.[3]  At the hearing, Debtor presented unrebutted evidence showing that the automatic stay was violated by Modern Rent to Own, and that these violations continued with knowledge of Debtor's bankruptcy, constituting willful violations of the automatic stay, and that Debtor was injured as a result.  For the reasons set forth below, the Court finds that Debtor has met her burden and is entitled to nominal and punitive damages against Modern Rent to Own under 11 U.S.C. § 362 and Debtor's motion is granted in part and denied in part.

## BACKGROUND

The pleadings and testimony presented at the hearing established the following facts.  Debtor filed a petition under chapter 7 of title 11 on September 2, 2025.  ECF No. 1.  Debtor's Schedule G lists lease-purchase agreements for one dinette table and chairs, one couch and loveseat, one bedroom suite, and one laptop, with Modern Rent to Own, located at 407 W Meadowview St. Greensboro, N.C.  ECF No. 39, at 11 (the "Personal Property").[4]  Debtor testified at the hearing that as of the petition date, she

---

[2] An individual identifying himself as Will Cowper, store manager for Greensboro Modern Rent to Own also attended the hearing.  Mr. Cowper stated that Modern Rent to Own is a sole proprietorship owned by Carlo Bargiogli.  ECF No. 69, at 00:06:23-00:08:30.  Mr. Cowper is neither the proprietor of Modern Rent to Own, nor an attorney licensed to practice law.  As such, he was not permitted to represent Modern Rent to Own or Mr. Bargiogli at the hearing.

[3] The Court must construe filings by pro se litigants liberally.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

[4] Modern Rent to Own is not registered to do business in North Carolina, and is not a registered d/b/a.

was current on these agreements (the "Contracts").  Ex. B.  On September 5, 2025, the Bankruptcy Noticing Center served a notice regarding the No Proof of Claim Deadline on Modern Rent to Own at the address listed on Debtor's Schedule G.  ECF No. 15.  Shortly after the bankruptcy filing Debtor began receiving phone calls from Modern Rent to Own.  ECF No. 49, at 1.  At the hearing, Debtor testified that between the petition date and the date of the hearing, Debtor received over one hundred voice calls from Modern Rent to Own attempting to recover on Debtor's prepetition debt or repossess the Personal Property, at a rate of three to five phone calls per day; and, that these phone calls were so consistent that Debtor had no more space available to receive voicemails.  ECF No. 69, at 00:10:44-00:11:06.  Debtor also explained that she received over fifty text messages.  Id. at 00:11:06-00:11:20; see also Ex. A.[5]  As a result of these nonstop phone calls, Debtor testified that she missed reminders and phone calls from doctors' offices, and importantly that, because she takes on childcare for additional income and because she receives notice of this work by way of her phone, she missed opportunities to work as a result of her full voicemail.  ECF No. 70, at 00:03:00-00:04:00.  Debtor was also distraught that these phone calls persisted even after she

---

[5] The text messages follow the same format and appear to be automated; the texts include the amount due, the number of days the debt was past due, and include a link to pay for any past due debt.  Ex. A.

explained to a representative of Modern Rent to Own that she had filed for bankruptcy.  Id. at 00:01:00-00:02:00.  Debtor testified to the emotional and physical toll that these consistent and "harassing" phone calls took on her.  Id.  at 00:03:00-00:04:00; ECF No. 71, at 00:00:00-00:01:30.

On October 31, 2025, Debtor testified that she spoke directly with a representative of Modern Rent to Own and indicated that she had filed a case under chapter 7 of title 11.  ECF No. 69, at 00:11:25-00:12:10.  The representative explained that even if the Debtor had filed for bankruptcy, his job was to continuously call anyone whose account was not current, including Debtor.  ECF No. 70, at 00:11:30-00:12:00.  The employee directed Debtor to email documentation of her bankruptcy to the store at Store125@mrto.com and to speak to someone in management.  Id. at 00:12:10-00:12:22. Debtor testified that she emailed the store at the email above and that she called Modern Rent to Own to speak with the store's manager the following day.  Id. at 00:12:22-00:12:30.  On November 6, 2025, Debtor spoke with Will Cowper, store manager for Greensboro Modern Rent to Own, and informed him personally of the pending bankruptcy proceeding.  Id. at 00:12:50-00:13:20.  Cowper indicated that the store had received notice of Debtor's bankruptcy proceeding, nevertheless he had spoken with another manager who informed him that the automatic stay did not apply to Modern Rent

4

to Own.[6] Id. at 00:13:15-00:13:50.  Debtor argues that Modern Rent

to Own violated the automatic stay, and that the violations caused

her damages that were sufficiently egregious to support a finding

of punitive damages under 11 U.S.C. § 362(k)(1).  Modern Rent to

Own did not appear at the properly noticed hearing, or otherwise,

and presented no fact or argument on its behalf.

### DISCUSSION

Modern Rent to Own had knowledge of Debtor's bankruptcy and

Debtor's possessory interest in the items subject to the lease-

purchase agreement.  Therefore, Modern Rent to Own repeatedly

violated the automatic stay by calling and texting with knowledge

of Debtor's bankruptcy.  The number of calls and texts were

excessive and intentionally harassing.  For the reasons discussed

below, these actions were sufficiently willful, and Debtor is

entitled to recover damages under 11 U.S.C. § 362(k).

The automatic stay is the fundamental protection given to

debtors under the Bankruptcy Code.[7]  It provides a debtor with the

necessary breathing room to operate and function without

harassment or fear of losing property while organizing an

overwhelming amount of debt.  See In re Weatherford, 413 B.R. 273,

283 (Bankr. D.S.C. 2009).  The filing of a petition under 11 U.S.C.

---

[6] Neither Carlo Bargiogli [owner of Modern Rent to Own], nor counsel for Mr. Bargiogli or Rent to Own appeared at the hearing.

[7] 11 U.S.C. § 101 et seq.

§ 301 "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [and] any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . . ."  11 U.S.C. § 362(a)(3), (6).  Even a debtor's mere possessory interest, absent any legal interest, is protected by the automatic stay.  In re Salov, 510 B.R. 720, 729 (Bankr. S.D.N.Y. 2014) (collecting cases).  To enforce that fundamental protection, § 362(k)(1) provides that "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k)(1).  To establish a claim under § 362(k)(1), the moving party must show, by a preponderance of the evidence, that (1) the creditor violated the automatic stay; (2) the violation of the stay was willful; and (3) the willful violation caused the debtor some injury.  Cf. In re Clayton, 235 B.R. 801, 806 (Bankr. M.D.N.C. 1998) (discussing 11 U.S.C. § 362(h), amended by, 11 U.S.C. § 362(k)(1) (Pub. L. No. 109-8)).  For an act to be willful, "the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay."  In re Ennis, No. 14-02188-5-SWH, 2015 WL 6555392, at *5 (Bankr. E.D.N.C.

Oct. 28, 2015) (quoting <u>In re Strumpf</u>, 37 F.3d 155, 159 (4th Cir.

1994), <u>rev'd on other grounds</u>, 516 U.S. 16 (1995)).

**I. Modern Rent to Own had actual knowledge of Debtor's bankruptcy case and willfully violated the automatic stay under 11 U.S.C. § 362.**

The postpetition sending of invoices or attempts to collect

or repossess on a prepetition debt is a violation of the automatic

stay. <u>In re Lyle</u>, 662 B.R. 229, 234 (Bankr. E.D.N.C. 2024) (citing

<u>In re Robinson</u>, No. 06-10618-SSM, 2008 WL 4526183, at *3 (Bankr.

E.D. Va. Sept. 29, 2008). "[N]umerous courts have found that

sending bills for prepetition debts, even without threats to sue,

is a violation of the automatic stay." <u>Robinson</u>, 2008 WL 4526183,

at *3. Given the broadness of the automatic stay, "[a]s a

practical matter, the stay will, in most situations, enjoin a

creditor from sending letters and other correspondences to the

debtor." <u>In re McCarthy</u>, 421 B.R. 550, 565 (Bankr. D. Colo. 2009).

Communications intended to collect, assess or recover a claim

against a debtor amount to willful violations once a creditor

learns, or is otherwise put on notice, of debtor's bankruptcy

filing; similar intentional actions taken thereafter are "willful"

violations of the stay under § 362(k), <u>Lyle</u>, 662 B.R. at 235, and

a good faith mistake of law or fact, as to the effect of the

automatic stay, will not shield a creditor who willfully violates

it. See <u>Clayton</u>, 235 B.R. at 808 (concluding that "[k]nowledge of

the existence of an active bankruptcy case need not be communicated

through formal notification of the filing of a petition"); <u>see</u> <u>also</u> <u>In re Hamrick</u>, 175 B.R. 890, 893 (W.D.N.C. 1994) (explaining that a willful violation occurs when "'[t]here is ample evidence in the record to support the conclusion that [the creditor] knew of the pending petition and intentionally attempted to [continue collection procedures] in spite of it.'" (alterations in original) (quoting <u>Budget Serv. Co. v. Better Homes of Virginia, Inc.</u>, 804 F.2d 289, 292-93 (4th Cir. 1986))).

Upon the commencement of the case, Debtor had a possessory interest in the Personal Property, and that interest is protected by the automatic stay.  <u>See</u> <u>Salov</u>, 510 B.R. at 729.  Modern Rent to Own's repeated phone calls and text messages were in violation of the automatic stay.  <u>See</u> <u>Robinson</u>, 2008 WL 4526183, at * 3. Debtor credibly testified that, shortly after the petition date, Modern Rent to Own began its harassing phone calls, and that the demands for payment by Rent to Own in each of these phone calls made clear to Debtor that Modern Rent to Own was attempting to collect a debt under the prepetition lease directly from Debtor. Debtor's unrebutted testimony and the record[8] indicate that Modern

---

[8] On September 5, 2025, the Bankruptcy Noticing Center served a notice regarding the No Proof of Claim Deadline on Modern Rent to Own at the address listed on Debtor's schedule G.  ECF No. 15.

> "Proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." <u>Hagner v. United States</u>, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932); <u>see</u> <u>also</u> <u>Collier on Bankruptcy</u> ¶ 9006.11 (16th Ed. 2014)

Rent to Own received notice of the commencement of the bankruptcy case such that these violations were willful.  Debtor testified that on at least four occasions–September 5, 2025; October 31, 2025; November 1, 2025; and November 6, 2025–she provided actual notice of her bankruptcy case to representatives of Modern Rent to Own, and that the representatives acknowledged that Modern Rent to Own was independently aware of Debtor's bankruptcy.  See ECF No. 69, 00:12:22-00:13:20.  The rate of these repeated calls and texts were harassing, and when considered in light of the fact that Modern Rent to Own indicated it was aware of Debtor's bankruptcy and only attempted to recover the property after weeks of repeated notices, these calls sufficiently establish that Modern Rent to Own did not intend to collect the property, but instead intended to coerce and harass the Debtor to pay a prepetition debt.[9]

---

> (noting that courts have held that "Rule 9006(e) creates a rebuttable presumption that the paper mailed was received by the party to whom it was sent").  "This presumption may only be overcome by evidence that the mailing was not actually accomplished and the mere denial of receipt is insufficient."  In re Warren, 532 B.R. 655, 662 (Bankr. D.S.C. 2015).

In re Franklin, 614 B.R. 534, 545 (Bankr. M.D.N.C. 2020).

[9] In this case, the chapter 7 trustee did not move to assume or reject the lease for the Personal Property under 11 U.S.C. § 365(d)(1) and thus the lease was deemed rejected as of November 1, 2025.  A rejection is treated as a breach of the lease that took place immediately prior to filing of the bankruptcy petition.  See In re Miller, 247 B.R. 224, 226 (Bankr. E.D. Mich.), aff'd sub nom. Chateau Communities, Inc. v. Miller, 252 B.R. 121 (E.D. Mich. 2000), aff'd sub nom. In re Miller, 282 F.3d 874 (6th Cir. 2002), and aff'd sub nom. In re Miller, 282 F.3d 874 (6th Cir. 2002) (citing 3 Collier on Bankruptcy ¶ 365.09[1], at 365-72 (Lawrence P. King ed., 15th ed., 1999)).  As this is a no asset chapter 7 case, the Personal Property was not necessary for Debtors' reorganization and any rejection gave rise to a prepetition claim for damages to Modern Rent to Own as an unsecured creditor.  11 U.S.C. § 365(g).  Each text

Moreover, accompanying the repeated demands for payment and notices of default, Modern Rent to Own stated to Debtor that it intended to schedule a pickup of the Personal Property.  Id. at 00:13:50-00:14:05.  These circumstances indicate a willful effort to induce Debtor to pay a prepetition obligation, or to exercise control over property of the estate.  A mistake of law or fact as to what constitutes property of the estate, and by extension what interests are protected by the automatic stay, does not excuse a violation.  Hamrick, 175 at 893.[10]  These actions taken together

---

message Debtor received was intended to induce repayment under the terms of the Contracts; each text message included the amount owed, the number of days payment was late, and a method by which Debtor could repay the debt. See Ex. B.  Thus, the messages and their context in this case establish by unrebutted evidence that Modern Rent to Own was not simply threatening mere repossession of its collateral if the lease payments were not made but further was attempting to coerce Debtor to pay a pre-petition obligation.  As such, these actions also were in violation of the automatic stay.  11 U.S.C. § 362(a)(6); see In re McCarthy, 421 B.R. 550, 567 (Bankr. D. Colo. 2009) (finding a violation of the stay where a single phone call and letter to the debtor were intended to coerce the debtor to pay a prepetition debt and therefore violated the automatic stay).

[10] As explained in Franklin:

> In Taggart v. Lorenzen, --- U.S. ----, 139 S.Ct. 1795, 1802, 204 L.Ed.2d 129 (2019), the Court determined that mere knowledge of the discharge order and the undertaking of an intentional act in violation of the discharge injunction were insufficient to establish contempt under §§ 105(a) and 524.  Nevertheless, a creditor's subjective belief that its conduct was not contemptuous will not shield it from liability if that belief was not objectively reasonable.  Id.  Therefore, a creditor will not be liable for contempt of the discharge injunction if it were "objectively reasonable" for a creditor to believe that such actions did not violate the court's order.  Id.

Franklin, 614 B.R. at 546 n.19.  Some courts have held that the Taggart standard applies to requests for contempt sanctions for a willful violation of the automatic stay.  See, e.g., In re Moo Jeong, No. 6:19-BK-10728-WJ, 2020 WL 1277575, at *6 (B.A.P. 9th Cir. Mar. 16, 2020); cf. Franklin, 614 B.R. at 546 n.19 ("the Court in Taggart expressly did not reverse the prior settled law enunciated by the Fourth Circuit in cases such as Budget Serv. Co., and courts should not extrapolate from Supreme Court opinions in a manner that is

10

demonstrate Modern Rent to Own's willful violation of the automatic

stay under 11 U.S.C. §§ 362(a)(3), (k).

**II.   Debtor was injured by Modern Rent to Own's violation of the automatic stay and is entitled to damages.**

Having determined that willfully violated the automatic stay,

the Court will consider whether Debtor "suffered some compensable

injury as a result of the violation."  In re Preston, 333 B.R.

346, 350 (Bankr. M.D.N.C. 2005).   Section 362(k)(1) permits a

debtor to recover actual damages when a creditor willfully violated

the automatic stay.  11 U.S.C. § 362(k)(1) ("an individual injured

by any willful violation of a stay provided by this section shall

recover actual damages, including costs and attorneys' fees, and,

in appropriate circumstances, may recover punitive damages");

Franklin, 614 B.R. at 548 ("[t]he Court has no discretion to

withhold an award of compensatory damages, including costs and

attorneys' fees, when the automatic stay is willfully violated")

(citation omitted).   The burden is on the debtor to establish

damages by a preponderance of the evidence, and the award "must be

founded on concrete, non-speculative evidence."  In re Ojiegbe,

539 B.R. 474, 479 (Bankr. D. Md. 2015) (quoting In re Seaton, 462

B.R. 582, 595 (Bankr. E.D. Va. 2011)).

---

inconsistent with settled circuit law").   In this case, even if the Taggart
standard applies, it was not "objectively reasonable" for Modern Rent to Own to
believe that its repeated and harassing postpetition collection efforts did not
violate the automatic stay.

### a. Actual and Compensatory Damages

Debtor requests that Modern Rent to Own pay the costs of filing and serving this motion, including transportations costs, among other things.  ECF No. 49, at 4.  As this Court has previously explained "actual damages" is a broad umbrella term including, but not limited to, lost time damages, out-of-pocket expenses, and emotional damages.  Franklin, 614 B.R. at 548; see also Skillforce, Inc. v. Hafer, 509 B.R. 523, 534 (E.D. Va. 2014).  Even absent concrete actual damages, a court may still award nominal damages for concrete but unspecified injuries resulting from a violation of the stay.  See, e.g., Lyle, 662 B.R. at 237 (granting $25.00 in nominal damages for each invoice making a demand on the debtor's bankruptcy estate and $75.00 in damages for travel costs).  At the hearing, Debtor presented unrebutted evidence that the constant phone calls from Modern Rent to Own left Debtor unable to receive voicemails and were so constant that she missed opportunities to work as a result.  ECF No. 70, at 00:03:00-00:04:00.  Debtor also testified that Modern Rent to Own's collection efforts and attempts at repossession caused her significant mental anguish that made effectively administering her case difficult.  ECF No. 69, at 00:03:00-00:04:00; ECF No. 71, at 00:00:00-00:01:30.  Although this distress was evident based on Debtor's testimony at the hearing, Debtor did not provide any specific evidence as to emotional distress damages.  It is likely that Debtor's actual

12

damages are more significant than the evidence presented at the
hearing given the unrelenting efforts of Modern Rent to Own to
repossess the Personal Property, the cost of transportation to
court to litigate the instant motion, and service costs, among
other things.   Nevertheless, there is insufficient evidence to
specifically quantify compensatory damages to ameliorate these
harms, as such the Court will grant nominal damages to Debtor in
the amount of $1.00 as Modern Rent to Own's collection efforts
interfered with Debtor's ability to access her voicemail, schedule
opportunities to work, and made the Debtor miss important
notifications and reminders from Debtor's doctor's office.   ECF
No. 69, at 00:10:44-00:11:06.

### b. Punitive Damages

Debtor also requests an award of undetermined punitive
damages for Modern Rent to Own's intentional misconduct.  ECF No.
49, at 4.  Punitive damages are awarded where a creditor's conduct
rises to the level of "'egregious, vindictive or intentional
misconduct.'"  Lyle, 662 B.R. at 238 (quoting Clayton, 235 B.R. at
811).  "Punitive damages are appropriate where the creditor's
actions 'demonstrate a disdain for the financially vulnerable
customers it purports to serve and an utter disregard for the
automatic stay.'"  Id. (quoting Franklin, 614 B.R. at 542; see
also In re Johnson, No. 15-50053, 2016 WL 659020, at *5 (Bankr.
W.D.N.C. Feb. 17, 2016) (awarding punitive damages of $100.00 per

13

phone call for 540 phone calls made to the debtors over a six-month period in violation of the automatic stay, for a total award of $54,000.00); cf. Lyle, 662 B.R. at 238 (declining to award punitive damages where the creditor's communications did not "support a finding of callous disregard for the stay").  Thus, punitive damages are appropriate where a creditor has acted with "'actual knowledge' that it was 'violating [a] federally protected right or with reckless disregard of whether he was doing so.'" Franklin, 614 B.R. at 549 (quoting Wells Fargo Bank, N.A. v. Jones, 391 B.R. 577, 608 (Bankr. E.D. La. 2008)).

Modern Rent to Own's conduct in this case was in reckless disregard of the stay and warrants punitive damages.  According to Debtor's testimony, Modern Rent to Own received at least four notices of Debtor's bankruptcy, with the first notice served on September 9, 2025.  ECF No. 15.  The collection attempts persisted even after Debtor specifically informed a representative and Cowper of her case and Modern Rent to Own was entirely dismissive of Debtor's filing.  Since the petition date, Debtor has received over 100 phone calls at a rate of three to five calls per day, leaving her voicemail constantly full.  ECF No. 69, at 00:10:44-00:11:06.  Because these actions persisted despite receiving notice of the bankruptcy filing, these actions demonstrate a reckless disregard for the automatic stay.  As such, the Court

14

will impose punitive damages.  In Franklin, the court explained

that:

> When determining the appropriate amount of punitive
> damages, courts "aim at 'deterrence and retribution.'"
> Charity v. NC Fin'l Solutions of Utah, LLC (In re
> Charity), Case No. 16-31974-KLP, Adv. P. No. 16-03121-
> KLP, 2017 WL 3580173, at *18 (Bankr. E.D. Va. August 15,
> 2017) (quoting Saunders v. Equifax Info. Servs., L.L.C.,
> 469 F.Supp.2d 343, 348 (E.D. Va. 2007), aff'd sub
> nom. Saunders v. Branch Banking & Trust Co. of Va., 526
> F.3d 142 (4th Cir. 2008)).  In taking aim at these
> purposes, courts should consider "three guideposts": (1)
> "the degree of reprehensibility" of the creditor's
> conduct; (2) "the ratio between punitive and
> compensatory damages"; and (3) the amount of punitive
> damages awarded in other comparable cases as compared to
> the actual damages suffered in such cases.  Charity,
> 2017 WL 3580173, at *18.  The reprehensibility of the
> creditor's conduct is assessed in light of evidence of
> the creditor's "'indifference to or [] reckless
> disregard' for the rights of others, whether the target
> of the conduct was financially vulnerable and whether
> the conduct involved repeated actions."  Id. at *19
> (quoting State Farm Mut. Auto. Ins. Co. v. Campbell, 538
> U.S. 408, 418, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)).
> Where actual damages are low, the ratio of actual damages
> to punitive damages "has less significance" because a
> simple multiple of actual damages "'would utterly fail
> to serve the traditional purposes underlying an award of
> punitive damages, which are to punish and deter.'"  Id.
> (quoting Saunders, 526 F.3d at 154).  The amount awarded
> should deter both the creditor and others, and should
> motivate the creditor "to devote the resources necessary
> to correct the deficiencies in its bankruptcy
> procedures."  Id. at *20.

In re Franklin, 614 B.R. at 549-50.

Modern Rent to Own's conduct was repetitive and reckless

justifying a moderate damage award under the first guidepost.

Because Modern Rent to Own continued to attempt collection of

Debtor's pre-petition obligation dozens of times outside the

Bankruptcy Court despite its knowledge of the bankruptcy, these actions were taken with a reckless disregard to the automatic stay. Modern Rent to Own did not appear at the properly noticed hearing and provided no explanation as to why these actions continued, further demonstrating its cavalier attitude toward the automatic stay and the authority of this Court.  Debtor has health issues, cares for her grandchild, and struggles with little household income.  Modern Rent to Own's actions are consistent with the callousness necessary to support a moderate award of punitive damages under the first guidepost.

Actual damages awarded in this case are low, not because of the actual damages were minimal, but because Debtor as an unrepresented party failed to sufficiently quantify the significant effects of the harassment.  Thus, limiting punitive damages to any multiple of actual damages in this instance would fail to serve the purposes for imposing punitive damages, and the Court will give this guidepost less weight.

Courts have awarded significant punitive damages where actual damages were small, and when circumstances demonstrate that creditors "'simply ignored the automatic stay.'"  Franklin, 614 B.R. at 550 (quoting In re Johnson, 2016 WL 659020, at *5); see also Charity, 2017 WL 3580173, at *20.  For example, in Johnson, the debtors were awarded $54,000.00 in punitive damages calculated at $100.00 per phone call for 540 calls made to debtors over a

six-month period in violation of the automatic stay.    2016 WL 659020, at *5.    In In re Burns, the Court awarded $2,500.00 in punitive damages, and $35,711.78 in total damages, where the creditor continued making phone calls to the debtor about her delinquent account, the debtor warned the creditor about her pending bankruptcy, and the creditor chose to move forward with repossession despite those warnings.    503 B.R. 666, 680 (Bankr. S.D. Miss. 2013).

In this case, Debtor seeks an award of punitive damages in an unspecified amount to deter Modern Rent to Own's collection efforts in the future given the harassing collection methods employed by Modern Rent to Own in this instance.    The Court does not have precise evidence as to how many phone calls or text messages were received by the Debtor after notice was received of Debtor's filing.    But, Debtor credibly testified that these phone calls were received at a rate of three to five calls per day, ECF No. 69, at 00:10:44-00:11:06, meaning that, in addition to numerous text messages, Debtor received approximately one hundred phone calls from Modern Rent to Own between September 9, 2025, the day on which the Bankruptcy Noticing Center mailed the No Proof of Claim Deadline to Modern Rent to Own, and November 10, 2025, the day she filed the instant motion. ECF No. 49.    Moreover, Debtor's conversation with the representative on October 31, 2025, suggests that it is Modern Rent to Own's policy to contact anyone behind on

17

their payments even if they have filed for bankruptcy.  ECF No. 70, at 00:12:40-00:13:00.  Having considered Modern Rent to Own's conduct as set forth herein, and in consideration of the guideposts set forth by the Supreme Court and other courts for determinations of punitive damages under § 362(k), this Court will impose punitive damages of $5,000.00 for the phone calls, messages, and other reckless and harassing actions by Modern Rent to Own.[11]  A lesser amount would be insufficient to deter Modern Rent to Own's persistent practices given the conduct outlined herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, and DECREED** as follows:

1.   Debtor is awarded actual damages in the amount of $1.00 against Modern Rent to Own as compensatory damages.

2.   Debtor is awarded punitive damages against Modern Rent to Own in the amount of $5,000.00.

3.   Within seven (7) business days of the entry of this Order, Debtor is directed to serve a copy of this Order by United States mail to Modern Rent to Own at the business address.

---

[11] The total amount of damages is twice the amount Debtor allegedly owes on the underlying contractual obligations; the Court considered these amounts when assessing the punitive damage awards because the actual damages in this case were failed to provide a meaningful guidepost.  See Franklin, 614 B.R. at 552 n.24.  (explaining that maintaining a reasonable ratio between the punitive damages imposed and the underlying debt may provide for an appropriate guidepost where a ratio to actual damages would otherwise unreasonably undermine the Court's ability to impose punitive damages).

4.     Within twenty-one (21) days of the entry of this Order, Modern Rent to Own is DIRECTED and REQUIRED to pay $5,001.00 to Debtor.

5.     The Court retains full and continuing jurisdiction over the interpretation and enforcement of this Order, notwithstanding any dismissal of the bankruptcy case.

6.     The Court will conduct a compliance hearing on **February 19, 2026**, at 9:30 a.m. in Courtroom 1, Second Floor, 101 S. Edgeworth Street, Greensboro, NC 27401 to determine whether Modern Rent to Own has complied with this Order.  If the amounts have not been paid in full at the time of the compliance hearing, Modern Rent to Own and Carlo Bargiogli shall appear and show cause why they should not be held in contempt.  Contempt sanctions may include further monetary relief being entered against Modern Rent to Own and Carlo Bargiogli.

[END OF DOCUMENT]

Parties to be Served
25-10566

John Paul Hughes Cournoyer
Bankruptcy Administrator                               Via CM/ECF

Samantha K. Brumbaugh
Chapter 7 Trustee                                     Via CM/ECF

Sharon Annette Reid
1183 University Drive #105-205
Burlington, NC 27215
ALAMANCE-NC

Sharon Annette Reid
A-1 1212 Collins Drive
Burlington, NC 27215